# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Robert E. Blackburn

Civil Action No. 07-cv-01947-AP

In re: JOHN ROBERT BURKE
(Bankruptcy Case No. 98-25466-MER)

RICHARD GREENE,

        Appellant,

v.

JOHN ROBERT BURKE,

        Appellee.

## ORDER AFFIRMING ORDERS AND JUDGMENTS
## OF THE UNITED STATES BANKRUPTCY COURT

**Blackburn, J.**

The appellant timely appeals orders and judgments of the United States Bankruptcy Court for the District of Colorado. The appellant filed an opening brief [#25] on January 8, 2008. The appellee filed a response brief [#27] on February 4, 2008, and the appellant filed a reply brief [#35] on February 22, 2008.

The rulings challenged by the appellant are contained in three orders entered by the bankruptcy court in an adversary proceeding tied to the bankruptcy case of the appellee, John Burke. ***In re John Robert Burke***, Bankruptcy Case No. 98-25466-MER (Bankr. D. Colo.), Consolidated Adversary Proceeding No. 98-1754-SBB. Those orders and judgments are (1) **Memorandum Opinion and Order** [#230] and related Judgment [#231], filed March 18, 2005; (2) **Findings of Fact, Conclusions of Law and Order** [#276] and related Judgment [#277], filed May 27, 2005, *nunc pro tunc* to the

bankruptcy court's oral ruling on April 15, 2005 [#s 249-250] (transcripts of April 15, 2005 oral ruling); and (3) **Findings of Fact, Conclusions of Law and Order** [#405], and related Judgment [#406], filed August 23, 2007. I will refer to the bankruptcy court's written orders by their date, i.e., (1) March 18, 2005, Order; (2) May 27, 2005, Order; and (3) August 23, 2007, Order. The appellant challenges also certain evidentiary rulings made by the bankruptcy court during a trial of the underlying adversary proceeding. The relevant portions of the transcript are cited in the discussion of those issues. I affirm the challenged orders and judgments of the bankruptcy court.[1]

## I. JURISDICTION

Under 28 U.S.C. § 1334, United States District Courts have original jurisdiction in all civil proceedings arising in cases under Title 11, United states Code. I have jurisdiction to adjudicate this bankruptcy appeal under 28 U.S.C. § 158(a)(1).[2]

## II. STANDARD OF REVIEW

I review the bankruptcy court's conclusions of law *de novo*. **In re Mullet**, 817 F.2d 677, 678 (10th Cir.1987). I am bound by the bankruptcy court's findings of fact, unless they are clearly erroneous. **Fed. R. Bankr.P. 8013**; *In re Branding Iron Motel, Inc.*, 798 F.2d 396, 399 (10th Cir.1986). A finding of fact is clearly erroneous only if the appellate court has the definite and firm conviction that a mistake has been committed. ***United States v. United States Gypsum Co.***, 333 U.S. 364 (1948). It is the responsibility of an appellate court to accept the ultimate factual determination of the fact finder, i.e., the bankruptcy court, unless that determination either 1) is completely

---

[1] The issues raised by and inherent to this appeal are fully briefed, obviating the necessity for oral argument.

[2] The appellants bring this appeal under 28 U.S.C. § 158(a) and Fed. R. Bankr.P. 8001.

2

devoid of minimum evidentiary support displaying some hue of credibility, or 2) bears no rational relationship to the supportive evidentiary data. ***Jardine's Professional Collision Repair, Inc. v. Gamble***, 232 B.R. 799, *800 (D. Utah, 1999) (citing ***Gillman v. Scientific Research Prods. (In re Mama D'Angelo, Inc.),*** 55 F.3d 552, 555 (10th Cir. 1995)(internal citations omitted)); ***In re Dinviney***, 225 B.R. 762, *769 (10th Cir. BAP (Okla.), 1998) (internal citations omitted).

Otherwise, the rulings of the bankruptcy court are reviewed for an abuse of discretion. ***See, e.g., In re Aspen Limousine Service, Inc.***, 198 B.R. 341, 344 (D. Colo.1996). Under the abuse of discretion standard, "'a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" ***Moothart v. Bell***, 21 F.3d 1499, 1504 (10th Cir.1994) (*quoting* ***McEwen v. City of Norman***, 926 F.2d 1539, 1553-54 (10th Cir.1991)). An abuse of discretion occurs when a trial court bases its ruling on a view of the law that is erroneous. ***Cooter & Gell v. Hartmarx Corp.***, 496 U.S. 384, 405 (1990). When I apply the abuse of discretion standard, I defer to the trial court's judgment because of its first-hand ability to view the witness or evidence and assess credibility and probative value. ***Moothart***, 21 F.3d at 1504.

### III. FACTS

The appellee, John Burke, filed a petition under Chapter 11 of the United States Bankruptcy Code on October 30, 1998. Burke listed appellant Richard Greene as a creditor. Greene filed a claim in the bankruptcy case, and on December 7, 1998, Burke filed an adversary proceeding to contest Green's claim. On February 23, 1999, Greene filed an adversary proceeding to contest the dischargeability. The two adversary

3

proceedings later were consolidated. On January 25, 2000, Burke's Chapter 11 case was converted to a case under Chapter 7 of the Bankruptcy Code and a trustee was appointed.

On May 16, 2000, the trustee was substituted for Burke as the plaintiff in the consolidated adversary proceeding. On June 2, 2000, the trustee filed an amended complaint in the adversary proceeding. In the amended complaint, the trustee asserted objections to Greene's claim. On June 23, 2000, the trustee filed a motion for partial summary judgment challenging Greene's status as a secured creditor. Greene claimed to have a lien on Burke's Colorado real property based on a Colorado state court judgment. The state court judgment was based on Greene's efforts to domesticate a judgment he claimed was entered against Burke and in favor of Greene in Mexico. In his complaint and his motion for summary judgment, the trustee asserted that the state court judgment is invalid. The trustee challenged the subject matter jurisdiction of the state court, and argued that the state court could not domesticate the Mexican judgment without a hearing. Greene filed a response and cross-motion for summary judgment.

On August 28, 2000, the bankruptcy court entered an order concerning the cross-motions for summary judgment. The bankruptcy court concluded that the principles of comity and full faith and credit did not preclude the bankruptcy court from determining whether the Colorado judgment was a proper basis for Green's secured creditor status in the bankruptcy. The bankruptcy court determined also that Greene had no enforceable lien against Burke's real property based on the transcript of judgment Greene had obtained from the District Court in and for the City and County of Denver (Denver District Court).

On September 5, 2000, Greene appealed the bankruptcy court's order to the

4

district court. Ultimately, that appeal was assigned to me. On October 7, 2002, I entered an order affirming the bankruptcy court's order in part, and reversing the order in part. I concluded that the bankruptcy court did not err in determining that it had jurisdiction to hear the trustee's challenge to the Colorado judgment. However, I concluded that the bankruptcy court erred when it concluded that Greene had no enforceable lien against Burke's property based on the recorded transcript of judgment that Greene had obtained from the Denver District Court. In essence, I concluded that, on its face, the recorded transcript of judgment created a valid lien under Colorado law. I remanded the case to the bankruptcy court with instructions, *inter alia*, to "resolve the validity of both the Mexican and Colorado Judgments." **Burke v. Greene**, 00-RB-01763 (D. Colo. 2002), Order entered October 2, 2002, p. 11.

Following the remand, Greene and the trustee agreed to a settlement of Greene's claim. On July 9, 2004, Burke filed an objection to the settlement between the trustee and Greene. The settlement was approved by the bankruptcy court over Burke's objection. **In re John Robert Burke**, Bankruptcy Case No. 98-25466-MER (Bankr. D. Colo.), [#206], filed July 20, 2004.

Burke continued to assert a challenge to Greene's claim, and the bankruptcy court permitted Burke to litigate his challenge to Greene's claim, even though the trustee and Greene had reached a settlement concerning Greene's claim. On October 12, 2004, Greene filed a suggestion of lack of subject matter jurisdiction in the adversary proceeding in which Burke's objection was at issue. In that adversary proceeding, Burke asserted that Greene's Colorado judgment against Burke was not valid. Green argued that the bankruptcy court lacked subject matter jurisdiction to review Green's claimed Colorado judgment under the **Rooker-Feldman** doctrine and 28

5

U.S.C. § 1257.  *See **District of Columbia Court of Appeals v. Feldman***, 460 U.S. 462 (1983); ***Rooker v. Fidelity Trust Co.***, 263 U.S. 413 (1923).  The bankruptcy court entered an order in which it concluded that the ***Rooker-Feldman*** doctrine and 28 U.S.C. § 1257 did not bar the bankruptcy court's jurisdiction to hear Burke's challenge to Greene's Colorado judgment.  *March 18, 2005, Order*, p. 7.

Greene argued also that Burke did not have standing to pursue Burke's objection to Greene's claim because the trustee, standing in the shoes of the debtor as the debtor in possession, and Greene had agreed to a settlement of Greene's claim.  In addition, Greene argued that Burke was barred from pursuing his objection based on waiver and laches.  The court expressed its findings, conclusion, and orders on this issue in its May 27, 2005, Order.  In that order the court concluded that Burke had standing to object to Greene's claim, despite the trustee's settlement with Greene, and that the court properly must resolve the validity of the Mexican and Colorado judgments. The bankruptcy court concluded also that waiver and laches were not applicable.

On August 23, 2007, the bankruptcy court entered Findings of Fact, Conclusions of Law, Order and Judgment in the consolidated adversary proceeding.  *August 23, 2007, Order.*  The court determined that the Colorado judgment is not valid and, on this and other bases, sustained Burke's objection to Greene's claim.  Greene appeals the bankruptcy courts rulings on several issues.

### IV.  BURKE'S STANDING TO ASSERT CLAIM OBJECTION

Greene argues that the bankruptcy court erred when it determined that Burke had standing to assert an objection to Greene's claim.  Again, the Chapter 7 trustee and Greene had reached a settlement concerning Greene's claim, which settlement was approved by the bankruptcy court.  Greene argues that the trustee, standing in the

6

shoes of the debtor, settled Greene's claim and, as a result, Burke does not have standing to assert an objection to Greene's claim. I disagree.

A party in interest may object to a claim filed in a bankruptcy case. 11 U.S.C. § 502(a). Addressing the issue of the debtor's standing to object to Greene's claim, the bankruptcy court noted that, generally, "the primary and principal party with standing to object to a claim, and typically the exclusive party, is the Trustee." *May 27, 2005, Order*, ¶ 8. Generally, a debtor "has no standing to object to claims and orders relating to them because the debtor does not have a pecuniary interest in the distribution of the assets of the estate." **In re Kieffer-Mickes, Inc.**, 226 B.R. 204, 208 (8th Cir. BAP1998). A debtor has standing to object, however, "when it appears that, if the contested claims are disallowed, there will be a surplus." *Id*. The bankruptcy court cited additional cases that stand for the same proposition.

The bankruptcy court found that Burke had standing to object to Greene's claim because if Greene's claim were disallowed, then there would be a substantial surplus in the bankruptcy estate after unsecured creditor claims are paid. *May 27, 2005, Order*, ¶ 9. Under 11 U.S.C. § 726(a)(6), such a surplus would be available for distribution to the debtor. Therefore, Burke had a pecuniary interest in the bankruptcy estate that was affected by the allowance or disallowance of Greene's claim. In these circumstances, Burke had standing to object to Greene's claim. The bankruptcy court's conclusion that Burke had standing to object to Greene's claim is correct.

Greene asserts also that Burke waived any right to pursue and objection to Greene's claim when Burke relied on the trustee to prosecute an objection to Greene's claim, and that the doctrine of laches bars Burke from pursuing his objection to Greene's claim because of his reliance on the trustee to pursue an objection to

7

Greene's claim. I disagree.

## V. BANKRUPTCY COURT'S JURISDICTION

Greene argues that the bankruptcy court erred when it concluded that it had subject matter jurisdiction to determine if the Colorado judgment Greene claims to hold was valid. Again, in a previous appeal in this case, I concluded that the bankruptcy court has jurisdiction to determine the validity of the Colorado judgment. ***Burke v. Greene***, 00-RB-01763 (D. Colo. 2002), Order entered October 2, 2002. After my remand to the bankruptcy court, Greene asserted for the first time that the bankruptcy court's jurisdiction over this issue is barred under the ***Rooker-Feldman*** doctrine and 28 U.S.C. § 1257. Addressing this issue, the bankruptcy court concluded that the ***Rooker-Feldman*** doctrine and 28 U.S.C. § 1257 did not bar the bankruptcy court's jurisdiction to determine the validity of Greene's claimed Colorado judgment. *March 18, 2005, Order*, p. 7. I agree.

The ***Rooker-Feldman*** doctrine is named for the two seminal United States Supreme Court cases that first described its contours. ***District of Columbia Court of Appeals v. Feldman***, 460 U.S. 462 (1983); ***Rooker v. Fidelity Trust Co.***, 263 U.S. 413 (1923). The ***Rooker-Feldman*** doctrine has its roots in 28 U.S.C. § 1257(a), which provides that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari." Implicit in this grant of jurisdiction is the denial of authority to lower federal courts to review state court judgments. ***See Rooker***, 263 U.S. at 416.[3] Simply stated,

---

[3] This limitation on federal subject matter jurisdiction applies to all state court judgments, by whatever court issued, whether temporary or final. ***Kenmen Engineering v. City of Union***, 314 F.3d 468, 473-75 (10th Cir. 2002)

8

***Rooker-Feldman*** constrains "a party losing in state court . . . from seeking what in substance would be appellate review of [a] state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." ***Johnson v. De Grandy***, 512 U.S. 997, 1005-06 (1994).

The doctrine applies both to claims that were actually decided by the state court and to claims that are "inextricably intertwined" with the state court judgment. ***See Kenmen Engineering v. City of Union***, 314 F.3d 468, 473 (10th Cir. 2002), ***overruled on otr. grounds***, ***Lance V. Dennis***, 546 U.S. 459, 465 (2006). To determine whether a claim is inextricably intertwined with the state court judgment,

> in general we must ask whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment. Three related concepts – injury, causation, and redressability – inform this analysis. In other words, we approach the question by asking whether the state-court judgment *caused*, actually and proximately, the *injury* for which the federal-court plaintiff seeks *redress*.

***Id***. at 476 (footnote, internal quotation marks, and citations omitted; emphases in original). Recently, the Supreme Court noted that ***Rooker-Feldman*** "is a narrow doctrine, confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" ***Lance v. Dennis***, 546 U.S. 459, 464 (U.S. 2006), ***quoting Exxon Mobil Corp. v. Saudi Basic Industries Corp***, 544 U.S. 280, 284 (2005).

The bankruptcy court was correct when it concluded that its jurisdiction is not barred by the ***Rooker-Feldman*** doctrine and 28 U.S.C. § 1257. In an order resolving Burke's challenge to Greene's claim, the bankruptcy court found the following facts concerning the judgment Greene claimed to hold, and there is no dispute about these

9

basic facts. *August 23, 2007, Order*, p. 11. On April 3, 1998, Greene filed with the Denver District Court a Verified Petition Seeking Registration, Recognition, and Enforcement of Foreign Judgment. The Denver District Court recognized and domesticated the judgment and issued a Transcript of Judgment. On April 23, 1998, Burke filed in Denver District Court a Verified Answer to the Verified Petition. Burke raised jurisdictional and procedural defects and fraud as defenses. The Denver District Court set Burke's verified answer for a hearing on November 5, 1998. Burke filed his bankruptcy petition on October 30, 1998, prior to the hearing set in Denver District Court. The automatic stay stayed further proceedings in the Denver District Court. 11 U.S.C. § 362.

I note that Greene claims that Burke's verified answer was not timely filed in the Denver District Court. The bankruptcy court found that Burke's verified answer was filed timely in the Denver District Court. There is ample basis in the record to support this finding of fact.

In its earlier order resolving the **Rooker-Feldman** issue, the bankruptcy court relied on essentially the same findings of fact.

> Defendant Burke filed his bankruptcy Petition before the Denver District Court held a hearing on the [Greene's] Petition and [Burke's] Verified Answer. Thus, the *Rooker-Feldman* doctrine cannot be implicated here where a final hearing on the Foreign Judgment Petition was not held before the Denver District Court. These issues of fairness and due process are yet to be determined and are issues for trial in this adversary proceeding.

March 18, 2005, Order, p. 7. The issue of whether or not the Denver District Court should recognize the Mexican judgment was pending before the Denver District Court when Burke filed his bankruptcy petition. The Denver District Court had not made a final determination of this issue when Burke filed his bankruptcy petition.

10

Again, *Rooker-Feldman* constrains "a party losing in state court . . . from seeking what in substance would be appellate review of [a] state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994). In this case, Burke did not seek appellate review of a final determination by the Denver District Court. Rather, he sought resolution of the issue that was pending before the Denver District Court when Burke filed his bankruptcy petition. After filing bankruptcy, Burke asked the bankruptcy court to determine the question of Colorado law that was pending before the Denver District Court at the time of the bankruptcy filing: Is it proper to recognize the Mexican judgment under Colorado law? The bankruptcy court's resolution of this issue in the context of Burke's bankruptcy case does not constitute "what in substance would be appellate review of [a] state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Rather, the bankruptcy court proceedings on this issue are, in essence, the first line of judicial proceedings directed at resolving the issue. Further, Burke did not assert in the bankruptcy court that the Colorado transcript of judgment violated his federal rights.

The *Rooker-Feldman* doctrine and 28 U.S.C. § 1257 do not bar the bankruptcy court's jurisdiction over the issue of the validity of Greene's claimed Colorado judgment. As I concluded previously, outside of the context of Greene's *Rooker-Feldman* argument, the bankruptcy court has jurisdiction to resolve this issue. *Burke v. Greene*, 00-RB-01763 (D. Colo. 2002), Order entered October 2, 2002.

## VI. EVIDENCE

Greene raises also two evidence issues. First, he argues that the bankruptcy

11

court erred in limiting Greene's cross examination of Chris Watts. Second, he argues that the bankruptcy court erred when it excluded testimony of Fernando Garibay. I review the bankruptcy court's rulings on the admissibility of evidence under an abuse of discretion standard. **See, e.g., U.S. v. Contreras** 536 F.3d 1167, 1170 (10th Cir. 2008). An evidentiary ruling will not be disturbed "absent a distinct showing that it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error in judgment." **U. S. v. Jenkins**, 313 F.3d 549, 559 (10th Cir. 2002). I find no error in the bankruptcy court's rulings.

### A. Chris Watts

Chris Watts was a witness presented by Burke during the bankruptcy court's trial on Burke's objection to Greene's claim. During Greene's cross-examination of Watts, the court imposed a limitation on counsel's cross examination, as reflected in the following excerpt from the transcript:

> THE COURT: Let me just interrupt here.
>
> MR. SHEARER [counsel for Greene]: Yeah.
>
> THE COURT: And I want to make sure we're doing this right because everybody knows it's going on appeal. We have witnesses sequestered for a –
>
> MR. SHEARER: Right.
>
> THE COURT: --particular reason, right?
>
> MR. SHEARER: Well, yes, your Honor. So –
>
> THE COURT: And we did it at your request?
>
> MR. SHEARER: Right.
>
> THE COURT: And it's so they don't hear the testimony of witnesses that precede them, right?
>
> MR. SHEARER: Right.

12

> THE COURT: I think that may preclude you from selectively picking out the testimony of witnesses that preceded them. The whole reason they were sequestered is so they wouldn't hear that. So I'm going to urge you still again to inquire with questions rather than various different recitals. In closing, you can inform me of the inconsistencies and the contradictions. I will pick those up on my own and if I don't, you're going to tell me about them.
>
> But when they are sequestered I don't think you can selectively pick out testimony that was – they were purposely denied an opportunity to hear. So if you'll ask questions and then you help me tie those loose ends together, I would very much appreciate it.
>
> And I realize you can cross with leading. I understand that. But we have to strike a balance and I don't think you can keep running testimony as you recall it from a prior witness that we purposely sequestered this witness from.
>
> MR. SHEARER: Okay. With all due respect, I have a slightly different view of what sequestration is, Your Honor. But I will –
>
> THE COURT: Okay.
>
> MR. SHEARER: -- comply with what you've asked.

*In re John Robert Burke*, Bankruptcy Case No. 98-25466-MER (Bankr. D. Colo.), Consolidated Adversary Proceeding No. 98-1754-SBB, transcript [#401], filed February 27, 2007, pp. 118 - 120.

Greene argues that this limitation on his cross-examination of Watts was improper and prejudicial because the limitation prevented Greene from effectively using "cross-examination to develop the facts of the case and challenge the credibility of Mr. Watts and Mr. Burke (who were aligned with each other as witnesses.)" *Opening brief* [#25], filed January 8, 2008, p. 50. Greene argues that he should have been allowed to refer to the testimony of Burke to draw out the inconsistencies and contradictions between the testimony of Watts and Burke by exploring specific inconsistencies between their respective versions of the facts. *Id.* I disagree.

The limitation imposed by the bankruptcy court simply sought to preserve the

13

purpose of witness sequestration, which is to prevent the testimony of one witness from being influenced by the testimony of a previous witness. Reciting portions of Burke's testimony to Watts is not the only way to explore inconsistencies and contradictions between the testimony of the two witnesses. At most, the bankruptcy court's limitation required Greene to formulate questions on particular topics slightly differently. The limitation did nothing to preclude Greene from questioning Watts about the particular topics on which Greene perceived Watts' testimony to be inconsistent or contradictory when compared to Burke's. Further, as the bankruptcy court noted, Greene could argue such inconsistencies and contradictions in closing. The bankruptcy court's limitation was not an abuse of discretion.

### B. Fernando Garibay

Fernando Garibay is a Mexican lawyer who Greene called to testify before the bankruptcy court. Greene sought to present Garibay's testimony concerning the contents of the file of the Mexican court in which Greene asserts that he obtained a judgment against Burke. Specifically, Greene says he sought to have Garibay testify that Burke was named as a party in the Mexican lawsuit, and that the Mexican court file did not contain evidence of any appeal by Burke. Greene claims that Garibay was precluded from testifying that the Court filed showed that Burke was a party to both the settlement agreement and the stipulated judgment in the Mexican case. Greene claims that the bankruptcy court erroneously excluded this testimony because the testimony was in the nature of expert opinions. Greene claims also that the bankruptcy court erred in excluding deposition testimony of Garibay, which testimony indicated that Burke was a party to the Mexican lawsuit and to the stipulated Mexican judgment that settled the claims against Burke individually.

Greene cites the transcript of Garibay's testimony before the bankruptcy court as the basis for his claim of error. However, he cites in blanket-like fashion 49 pages of transcript without providing any more specific citations relevant to the court's rulings concerning Garibay's testimony that he claims were in error. *Opening brief* [#25], filed January 8, 2008, pp. 51 - 53. I am neither required nor inclined to parse through the transcript in search of support for Greene's arguments. **United States v. Dunkel**, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Despite my disinclination to search the record, I have scanned the transcript of Garibay's testimony before the bankruptcy court, which includes discussion of objections by Burke to portions of Garibay's testimony. It is notable that the court, addressing proposed testimony by Garibay concerning a document from the Mexican court file, said that "Mr. Garibay can identify what he found this document to be in the [Mexican court] file and with regard to what is in the caption, but not as to what the contents are or the translation of it, or circumstances surrounding it." **In re John Robert Burke**, Bankruptcy Case No. 98-25466-MER (Bankr. D. Colo.), Consolidated Adversary Proceeding No. 98-1754-SBB, transcript [#401], filed February 27, 2007, pp. 182 - 183. It also is notable that the bankruptcy court discussed Garibay's testimony in its Findings of Fact, Conclusions of Law and Order.

> Fernando Garibay, an attorney in Mexico, was retained by Mr. Greene *after* the underlying events of this case. His testimony is that the Settlement Agreement obligates Mr. Burke, individually. The original case was filed against Mr. Burke and Baja Cantina. The Mexican Judgment is against both and there was no appeal by Mr. Burke of this judgment. Mr. Garibay's testimony would reflect that the Mexican Judgment is for 999,960 U.S. Dollars, not Pesos. His review is forensic and strictly retrospective in nature and his testimony's weight and persuasiveness is thereby diminished.

15

*August 23, 2007*, Order, p. 10 (emphasis in original). This passage indicates that the bankruptcy court admitted and considered Garibay's testimony on these points. The points noted by the bankruptcy court in this passage are the points cited by Greene as the key points in Garibay's testimony.

Greene claims also that the bankruptcy court "compounded its error in excluding Mr. Garibay's testimony at trial by rejecting out of hand the undisputed, unrebutted, stipulated deposition testimony of Mr. Garibay that established that Mr. Burke was a party to the Mexican lawsuit, and stipulated Mexican judgment that settled the claims against him individually." *Opening brief* [#25], filed January 8, 2008, p. 53. Greene does not cite any specific point or points in the record of proceedings before the bankruptcy court that documents this disputed ruling. The bankruptcy court indicated in its Findings of Fact, Conclusions of Law and Orders that it considered at least some of Garibay's deposition testimony. *August 23, 2007, Order*, p. 10. Even if I assume that some portions of Garibay's deposition testimony were excluded by the court, such exclusion was inconsequential. Greene claims this deposition testimony indicated that Burke was a party to the Mexican lawsuit and was a party to the stipulated Mexican judgment. Again, the bankruptcy court noted in its Findings of Fact, Conclusions of Law and Orders that Garibay's testimony made precisely these points. *August 23, 2007, Order*, p. 10.

In short, nothing in the record cited by Greene demonstrates that the bankruptcy court erred in excluding any portion of Garibay's live testimony or Garibay's deposition testimony.

## VII. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

16

1.  That the challenged rulings of the bankruptcy court as stated in *In re John Robert Burke*, Bankruptcy Case No. 98-25466-MER (Bankr. D. Colo.), Consolidated Adversary Proceeding No. 98-1754-SBB, **Memorandum Opinion and Order** [#230] and related Judgment [#231], filed March 18, 2005, are **AFFIRMED**;

2.  That the challenged rulings of the bankruptcy court as stated in *In re John Robert Burke*, Bankruptcy Case No. 98-25466-MER (Bankr. D. Colo.), Consolidated Adversary Proceeding No. 98-1754-SBB, **Findings of Fact, Conclusions of Law and Order** [#276] and related Judgment [#277], filed May 27, 2005, *nunc pro tunc* to the bankruptcy court's oral ruling on April 15, 2005 [#s 249-250] (transcripts of April 15, 2005 oral ruling), are **AFFIRMED**; and

3.  That the challenged rulings of the bankruptcy court as stated in *In re John Robert Burke*, Bankruptcy Case No. 98-25466-MER (Bankr. D. Colo.), Consolidated Adversary Proceeding No. 98-1754-SBB, **Findings of Fact, Conclusions of Law and Order** [#405], and related Judgment [#406], filed August 23, 2007, are **AFFIRMED**.

Dated September 29, 2008, at Denver, Colorado.

**BY THE COURT:**

s/ Robert E. Blackburn
**Robert E. Blackburn**
**United States District Judge**